ORIGINAL

**LAW OFFICE OF BENJAMIN LEVINE**
Benjamin Levine
One Gateway Center, Suite 2500
Newark, New Jersey 07102
(973)-623-3000

**POMERANTZ HAUDEK BLOCK**
 **GROSSMAN & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue, 26th Floor
New York, N.Y. 10017

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------- x
STEVEN WEISSMANN, Individually :   Civil Action No.: 06-3226 (PGS)
And On Behalf of All Others Similarly :
Situated, :
  :   **FEDERAL SECURITIES**
                    Plaintiff, :   **CLASS ACTION COMPLAINT**
  :
      -against- :
  :
**PAR PHARMACEUTICAL** :
**COMPANIES, INC., SCOTT L.** :   **JURY TRIAL DEMANDED**
**TARRIFF, GERALD A. MARTINO, and** :
**DENNIS J. O'CONNOR.** :
  :
                Defendants. :
------------------------------------------------- :
  x

Plaintiff Steven Weissmann ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by his undersigned attorneys, for his Class Action Complaint against

defendants, alleges upon personal knowledge as to himself and his own acts, and upon

information and belief as to all other matters, based on, *inter alia*, the investigation conducted by

and through his attorneys, which included, among other things, a review of the defendants'
public documents, conference calls and announcements made by defendants, United States and
Securities Exchange Commission ("SEC") filings, wire and press releases published by and
regarding Par Pharmaceutical Companies, Inc. ("Par" or the "Company") securities analysts'
reports and advisories about the Company, and information readily obtainable on the Internet, as
follows:

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of public investors who purchased
the common stock of Par, between April 29, 2004 and July 5, 2006, both dates inclusive (the
"Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the
"Exchange Act").  Named as individual defendants are Scott L. Tarriff, Gerald A. Martino and
Dennis J. O'Connor.

2.      Throughout the Class Period, defendants reported earnings that were materially
inflated as a result of accounting errors including an understatement of accounts receivable
reserves.  The Company has now admitted that the overstatement of its revenues has resulted in
Par overpaying its business partners in various profit sharing arrangements.  As a result of the
Company's internal review of its trade accounts receivable balances, the Company has decided
to restate its previously reported financial statements for fiscal year 2004 and 2005 and the first
quarter of 2006.  In addition, Par will write-off inventory in an amount up to $15 million due to
flaw physical inventory procedures.

3.      In response to these revelations, on July 6, 2006, Par stock fell $4.78 per share,
losing nearly 26% of its value in one day on extremely high volume of over 9 million shares
traded, to close at $13.47 per share.

## JURISDICTION AND VENUE

4.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Par maintains business in this District and many of the acts and practices complained of herein occurred in substantial part in this District. In addition, the Company's principal executive offices are in this District.

7.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

8.    Plaintiff, Steven Weissman, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Par at artificially inflated prices during the Class Period and has been damaged thereby.

### Defendants

9.    Defendant Par Pharmaceutical Companies, Inc. f/k/a Pharmaceutical Resources, Inc.[1] is a Delaware corporation which maintains its principal executive office at 300 Tice

---

[1] On May 26, 2004, at the Pharmaceutical Resources, Inc. annual meeting, stockholders approved an amendment to

3

Boulevard, Woodcliff Lake, NJ 07677. The aggregate number of shares of Par common stock outstanding as of May 3, 2006, was approximately 35 million. As of December 31, 2005, Par had approximately 766 full-time employees. Par's common stock is actively traded on the New York Stock Exchange ("NYSE") under the ticker symbol "PRX."

10.     Defendant Scott L. Tarriff ("Tarriff") was, at all relevant times, the Company's President, Chief Executive Officer and Director.

11.     Defendant Gerald A. Martino ("Martino") was the Company's Executive Vice President and Chief Financial Officer since March 16, 2006.

12.     Defendant Dennis J. O'Connor ("O'Connor") was the Company's Vice President and Chief Financial Officer until March 2006. Since March 2006, O'Connor has served as the Company's Vice President for Administration.

13.     The defendants referenced above in ¶¶ 10-12 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

14.     Defendant, Par Pharmaceutical develops, manufactures and markets more than 110 generic drugs and innovative branded pharmaceuticals for specialty markets. The Company's product line consists of prescription and over the counter products in oral dosage form such as tablets, caplets, and two-piece hard-shell capsules, as well as in the semi-solid form of a cream. Its generic versions of drugs include antidepressants Paxil and Prozac.

### Defendants' False and Misleading Statements Issued During the Class Period

15.     On April 29, 2004, the Company issued a press release entitled "Pharmaceutical

---

the Company's certificate of incorporation to change the name of the Company to Par Pharmaceutical Companies, Inc.

Resources Reports First Quarter Sales and Earnings." The press release stated in relevant part:

> Pharmaceutical Resources, Inc. today reported that total revenues grew 99 percent to $211.8 million for the first quarter ended April 4, 2004. Reported net income rose 35 percent to $30.2 million and diluted earnings per share increased 27 percent to $.85. Excluding a gain associated with the sale of a Company facility, net income rose 27 percent to $28.5 million and diluted earnings per share increased 19 percent to $.80. This is compared with revenues of $106.4 million, net income of $22.4 million, and diluted earnings per share of $.67 in 2003.

16.     On May 14, 2004, the Company filed its report for the first quarter 2004 ended on April 4, 2004 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

17.     On July 28, 2004, the Company issued a press release entitled "Par Pharmaceutical Reports Second Quarter Sales and Earnings." The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported that total revenues grew 83 percent to $212.5 million for the second quarter ended July 4, 2004. For the second quarter, reported net income rose 29 percent to $29.9 million and reported diluted earnings per share increased 25 percent to $.85. This is compared with reported revenues of $115.9 million, net income of $23.1 million, and diluted earnings per share of $.68 for the same period a year ago. Excluding a charge associated with a retirement agreement, net income was $25.3 million and diluted earnings per share were $.74 in the second quarter of 2003.

18.     On August 13, 2004, the Company filed its report for the second quarter 2004 ended on July 4, 2004 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition,

5

pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

19.     On October 28, 2004, the Company issued a press release entitled "Par Pharmaceutical Reports Third Quarter Sales and Earnings." The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported total revenues of $151.6 million for the third quarter ended October 3, 2004. Par reported a net loss in the quarter of $35.1 million, or $1.03 loss per diluted share. This result includes a non-cash charge of $84.0 million, or $51.2 million after tax, for the write-off of in-process research and development (IPR&D) in connection with the purchase of Kali Laboratories, Inc., which was completed on June 9, 2004....Excluding this non-cash charge, adjusted net income was $16.2 million and adjusted diluted earnings per share were $.48. This is compared with reported revenues of $216.6 million, net income of $38.7 million, and diluted earnings per share of $1.11 for the same period a year ago.

20.     On November 12, 2004, the Company filed its report for the third quarter 2004 ended on October 3, 2004 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

21.     On February 24, 2005, the Company issued a press release entitled "Par Pharmaceutical Reports Sales and Earnings for 2004." The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported that total revenues increased 4 percent to a record $690.0 million for the year ended December 31, 2004. For the year, reported net income was $29.2 million and diluted earnings per share were $.84. Results for 2004 include a third-quarter, non-cash charge of $84.0 million, or $51.2 million after tax, for

6

the write-off of in-process research and development in connection with the purchase of Kali Laboratories, Inc., and a first-quarter, after-tax gain of $1.7 million associated with the sale of a company facility. Excluding these items, net income was $78.8 million and diluted earnings per share were $2.26 for 2004. This is compared with revenues of $661.7 million, reported net income of $122.5 million and reported diluted earnings per share of $3.54 in 2003.

For the fourth quarter, Par reported total revenues of $114.2 million, net income of $4.3 million and diluted earnings per share of $.12. This is compared with revenues of $222.8 million, net income of $38.2 million and diluted earnings per share of $1.08 for the same period a year ago.

22. On March 16, 2005, the Company filed its report for the year ended on December 31, 2004 with the SEC on a Form 10-K. The Form 10-K reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition, pursuant to the SOX, the Form 10-K contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company.

23. On April 28, 2005, the Company issued a press release entitled "Par Pharmaceutical Reports First Quarter Sales and Earnings." The press release stated in relevant part:

Par Pharmaceutical Companies, Inc. today reported total revenues of $97.5 million for the first quarter ended April 3, 2005. For the first quarter, reported net income was $1.9 million and diluted earnings per share were $.06. This is compared with revenues of $211.8 million, net income of $30.2 million, and diluted earnings per share of $.85 in 2004. Excluding a gain associated with the sale of a company facility, net income was $28.5 million and diluted earnings per share were $.80 for the same period a year ago.

24. On May 13, 2005, the Company filed its report for the first quarter 2005 ended on April 3, 2005 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition,

7

pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

25.     On July 28, 2005, the Company issued a press release entitled "Par Pharmaceutical Reports Second Quarter Sales and Earnings."  The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported total revenues of $117.0 million for the second quarter ended July 3, 2005. Par reported a net loss in the quarter of $.6 million, or $.02 loss per diluted share. This result includes an unrealized loss of $8.3 million, or $5.2 million after tax, reflecting the impairment of Par's investment in Advancis Pharmaceutical Corporation following the recent release of results from Advancis' Amoxicillin PULSYS Phase III clinical trials. Excluding this unrealized loss, net income was $4.6 million and diluted earnings per share were $.13. This is compared with reported revenues of $212.5 million, net income of $29.9 million, and diluted earnings per share of $.85 in 2004.

26.     On August 12, 2005, the Company filed its report for the second quarter 2005 ended on July 3, 2005 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor.  In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

27.     On October 27, 2005, the Company issued a press release entitled "Par Pharmaceutical Reports Third Quarter Sales and Earnings." The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported total revenues of $118.7 million for the third quarter ended October 2, 2005. For the quarter, reported net income was $25.3 million and diluted earnings per share were $.74. This result includes a $13.3 million after-tax gain on the sale of shares of common stock of New River Pharmaceuticals, Inc., and a

$6.4 million tax benefit resulting from the resolution of certain tax contingencies. Third-quarter results also include a non-cash charge of $4.4 million, after tax, for the impairment of assets related to Par's Abbreviated New Drug Application (ANDA) for latanaprost ophthalmic solution. Excluding these items, net income was $10.0 million and diluted earnings per share were $.29. This is compared with reported revenues of $151.6 million and a net loss of $35.1 million, or $1.03 loss per diluted share, in 2004. Excluding a non-cash charge of $51.2 million, after tax, for the write-off of acquired in-process research and development (IPR&D), net income was $16.2 million and diluted earnings per share were $.48 for the same period a year ago.

28.    On November 15, 2005, the Company filed its report for the third quarter 2005 ended on October 2, 2005 with the SEC on a Form 10-Q. The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor. In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

29.    On February 28, 2006, the Company issued a press release entitled "Par Pharmaceutical Reports Sales and Earnings for 2005." The press release stated in relevant part:

Par Pharmaceutical Companies, Inc. today reported total revenues of $433.2 million for the year ended December 31, 2005. For the year, Par reported a net loss of $8.3 million, or $.24 loss per diluted share. Results for 2005 include a non-cash charge of $27.1 million, after tax, for the divestiture of FineTech Laboratories Ltd., $10.2 million, after tax, of non-cash asset impairment charges, a $10.1 million, after tax, net gain related to investments and a $6.4 million tax benefit. Excluding these items, net income from continuing operations was $12.6 million, or $.36 per diluted share, for 2005.

For the fourth quarter, Par reported total revenues of $100.0 million and a net loss of $34.9 million, or $1.02 loss per diluted share. This result includes the $25.0 million after-tax charge for the FineTech divestiture and a non-cash charge of $5.8 million, after tax, for the impairment of assets related to Par's acquisition of the product registration to Isoptin® SR. Excluding these items, Par's net loss was $4.1 million, or $.12 loss per diluted share.

9

30.     On March 15, 2006, the Company filed its report for the year ended on December 31, 2005 with the SEC on a Form 10-K.  The Form 10-K reiterated the previously announced financial results and was signed by defendants Tarriff and O'Connor.  In addition, pursuant to the SOX, the Form 10-K contained signed certifications by defendants Tarriff and O'Connor, stating that the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company.

31.     On May 1, 2006, the Company issued a press release entitled "Par Pharmaceutical Reports First Quarter Sales and Earnings."  The press release stated in relevant part:

> Par Pharmaceutical Companies, Inc. today reported that total revenues grew 78 percent to $173.8 million for the first quarter ended April 2, 2006. For the quarter, income from continuing operations rose 212 percent to $8.4 million and diluted earnings per share from continuing operations increased 200 percent to $24.

32.     On May 12, 2006, the Company filed its report for the first quarter ended on April 2, 2006 with the SEC on a Form 10-Q.  The Form 10-Q reiterated the previously announced financial results and was signed by defendants Tarriff and Martino.  In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Tarriff and Martino, stating that the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

33.     The statements referenced above in ¶¶ 15-32 were each materially false and/or misleading when made as they misrepresented and/or conveniently omitted the following adverse facts which then existed and disclosure of which was necessary to make the statements made not false and/or misleading, including:

- the Company employed flawed and defective accounting practices that caused the Company to overstate revenues by up to $55 million.

- the Company failed to properly report accounts receivable reserves originated from delays in recognizing customer credits and uncollectible customer deductions;

- the Company failed to accurately report its financial statements and now, the Company will have to restate its historical financial statements for fiscal years 2004 and 2005 and the first quarter of 2006;

- as a result of the foregoing, the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and therefore were materially false and misleading; and

- as a result of the foregoing, the Company's financial results lacked any reasonable basis in fact.

**THE TRUTH SLOWLY EMERGES**

34.     On July 5, 2006, after the market closed, the Company issued a press release entitled "Par Pharmaceutical Will Restate Certain Prior Period Results and Delays Filing Its Second Quarter Form 10-Q." The press release in relevant part stated:

> Par Pharmaceutical Companies, Inc. today announced that an internal review of its trade accounts receivable balances revealed accounting errors that will result in the restatement of financial results for fiscal years 2004 and 2005 and the first quarter of 2006. This restatement will also delay the filing of Par's second quarter Form 10-Q with the U.S. Securities and Exchange Commission (SEC). The restatement is due to an understatement of accounts receivable reserves which resulted primarily from delays in recognizing customer credits and uncollectible customer deductions.
>
> The company expects that the effect of the restatement adjustments to its accounts receivable will be to reduce revenues by an amount up to $55 million over the applicable periods, prior to any potential recoveries. Because Par has profit sharing arrangements with a number of its business partners, the overstatement of revenues has resulted in Par overpaying its

11

business partners in some instances. Accordingly, the company will attempt to recover from those business partners a share of profits from products included in the overstated revenues. However, Par is unable to estimate at this time the amount of the overstated revenues that may be recovered. While the reduction in revenues will materially reduce reported earnings from the affected periods, the impact on specific prior periods is yet to be determined. In addition, Par will write-off inventory in an amount up to $15 million. The company is in the process of determining whether any of this amount should be recorded in prior period financial statements. The write-off results from physical inventory procedures as well as a change in inventory valuation methodology for slow-moving inventory.

35.     In response to these revelations, on July 6, 2006, Par stock fell $4.78 per share, losing nearly 26% of its value in one day on extremely high volume of over 9 million shares traded, to close at $13.47 per share.

36.     On July 6, 2006, Deborah A. Knobelman, an analyst with PiperJaffray lowered her price target for Par "to reflect the continued risk to the PRX story." Moreover, Knobelman noted that the "restatement clearly undermines our comfort in PRX's understanding of its business and operations." She concluded that she had a lack of confidence in the stock and recommended in staying clear of the stock until there is "more resolution/comfort in PRX's accounting capabilities and the stability of its business."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Par between April 29, 2004 and July 5, 2006, both dates inclusive (the "Class Period"), and who were damaged thereby (the "Class"). Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

12

38.    The members of the Class are so numerous that joinder of all members is imprac-
ticable.  Throughout the Class Period, Par common shares were actively traded on the NYSE.
While the exact number of Class members is unknown to Plaintiff at this time and can only be
ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands
of members in the proposed Class.  Record owners and other members of the Class may be
identified from records maintained by Par or its transfer agent and may be notified of the
pendency of this action by mail, using the form of notice similar to that customarily used in
securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all
members of the Class are similarly affected by defendants' wrongful conduct in violation of
federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the
Class and have retained counsel competent and experienced in class and securities litigation.
Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.    Common questions of law and fact exist as to all members of the Class and
predominate over any questions solely affecting individual members of the Class.  Among the
questions of law and fact common to the Class are:

·    whether the federal securities laws were violated by defendants' acts as
alleged herein;

·    whether statements made by defendants to the investing public during the
Class Period misrepresented material facts about the business, operations
and management of Par;

·    whether the Individual Defendants caused Par to issue false and
misleading financial statements during the Class Period;

·    whether defendants acted knowingly or recklessly in issuing false and
misleading financial statements;

13

    ·    whether the market prices of Par securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

    ·    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    ·    defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    ·    the omissions and misrepresentations were material;

    ·    the securities of the Company traded in an efficient market;

    ·    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    ·    Plaintiff and members of the Class purchased their Par stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts disclosed, without knowledge of the omitted or misrepresented facts.

44.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Par's common stock; and (iii) cause plaintiff and other members of the Class to purchase Par's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Par common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Par's finances and business prospects.

49.    By virtue of their positions at Par, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from Par's bonus policy, as well as the sale of Par common stock from their personal portfolios.

51.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and directors of Par, the Individual Defendants had knowledge of the details of Par internal affairs.

52.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Par. As officers and directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Par's businesses,

16

operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Par common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Par's business and financial condition which were concealed by defendants, plaintiff and the other members of the Class purchased Par common stock at artificially inflated prices and relied upon the price of the stock, the integrity of the market for the stock and/or upon statements disseminated by defendants and were damaged thereby.

53.     During the Class Period, Par common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Par common stock at prices artificially inflated by defendants' wrongful conduct. Had plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid. At the time of the purchases by plaintiff and the Class, the true value of Par stock was substantially lower than the prices paid by plaintiff and the other members of the Class. The market price of Par common stock declined sharply upon public disclosure of the facts alleged in this complaint.

54.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchase and sales of the Company's securities during the Class Period.

17

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

56.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     (a)     During the Class Period, defendants Tarriff, Martino, and O'Connor participated in the operation and management of Par, and conducted and participated, directly and indirectly, in the conduct of Par's business affairs. Because of their senior positions, they knew the adverse non-public information about Par's misstatement of income and expenses and false financial statements.

(b)     As officers and directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Par's financial condition and results of operations, and to correct promptly any public statements issued by Par which had become materially false or misleading.

(c)     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Par disseminated in the marketplace during the Class Period concerning Par's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Par to engage in the wrongful acts complained herein. The Individual Defendants therefore, were "controlling persons" of Par within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Par common stock.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Par.

18

By reason of their senior management positions and directors of Par, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Par to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Par and possessed the power to control the specific activities which comprise the primary violations about which plaintiff and the other members of the Class complaint.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20 of the Exchange Act for the violations of committed by Par.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, and certifying the plaintiff as the Class representative and Lead Plaintiff;

B.    Requiring defendants to pay damages sustained by plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated: July 17, 2006

19

Respectfully submitted,

**LAW OFFICE OF BENJAMIN LEVINE**

By: _____
Benjamin Levine
One Gateway Center, Suite 2500
Newark, New Jersey 07102
(973)-623-3000

**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP**
Marc I. Gross
Jeremy L. Lieberman
Fei-Lu Qian
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: 312-377-1181
Facsimile: 312-377-1184

**Attorneys for Plaintiff**