UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

*DOCUMENT ELECTRONICALLY FILED*

| | |
|---|---|
| In Re: PAR PHARMACEUTICAL SECURITIES LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS. | Master File No:<br>2:06-cv-03226 (PGS - ES)<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(c)
TO STRIKE ALLEGATIONS FROM THE SECOND
COMPLAINT AND FOR COUNSEL FEES AND COSTS**

| | |
|---|---|
| **GREENBERG TRAURIG, LLP**<br>Eric S. Aronson<br>200 Park Avenue, P.O. Box 677<br>Florham Park, New Jersey 07932-0677<br>Telephone: (973) 360-7900<br>Facsimile: (973) 301-8410 | **GREENBERG TRAURIG, LLP**<br>Richard A. Edlin (admitted in NJ)<br>Ronald D. Lefton (admitted *pro hac vice*)<br>Toby S. Soli (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, New York<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400 |

*Attorneys for Defendants Par Pharmaceutical Companies, Inc.,
Kenneth Sawyer, and Dennis J. O'Connor*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND..............................................................................................2

I.      The Accounting Applications Allegations .......................................................3

II.     The Inventory Allegations................................................................................6

ARGUMENT.......................................................................................................................7

      Plaintiffs' Allegations Lack Evidentiary Support And Therefore Should
      Be Stricken Under Rule 11 ..............................................................................7

CONCLUSION..................................................................................................................11

```
```
## TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

**Federal Cases**

*Cohen v. Kurtzman*, 45 F.Supp.2d 423 (D.N.J. 1999) ................................................ 8, 9

*Garr v. United States Healthcare*, 22 F.3d 1274 (3d Cir. 1994) ................................ 8

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002) .............................. 9

*In re Cendant Corp. Deriv. Action Litig.*, 96 F.Supp.2d 403 (D.N.J. 2000) ............... 9

*In re Kunstler*, 914 F.2d 505 (4th Cir. 1990) ............................................................. 8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   351 F.Supp.2d 334 (D. MD. 2004) ........................................................................... 9

*Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of
   Pennsylvania*, 103 F.3d 294 (3d Cir. 1996) ............................................................. 8

**Rules**

Federal Rule of Civil Procedure 11(b)(3) .................................................................. 1, 7

Federal Rule of Civil Procedure 11(c)(1) ..................................................................... 1

Federal Rule of Civil Procedure 11(c)(4) ..................................................................... 9

Defendants Par Pharmaceutical Companies, Inc. ("Par"), Kenneth Sawyer ("Sawyer") and Dennis J. O'Connor ("O'Connor") hereby move under Federal Rule of Civil Procedure 11(c)(1) for violation of Rule 11(b)(3): (a) to strike allegations in the Second Consolidated Amended Securities Class Action Complaint (the "Second Complaint") contained in Paragraphs 47-62 and 64-66; and (b) for counsel fees and costs associated with this Motion and their Motion to Dismiss the Second Complaint filed on September 17, 2008.

## PRELIMINARY STATEMENT

Plaintiffs' counsels' allegations about Par's accounting applications and inventory management software violate Rule 11. While claiming to rely on information provided by Confidential Informant 1 ("CI 1") and her subordinates, counsel deliberately misconstrues her statements, takes them out of context, and ignores other information she provided in order to allege untenable inferences and improper conclusions. Nor is there any likelihood that these allegations will be adequately substantiated after an opportunity for further investigation by counsel. Plaintiffs' Investigator had ample opportunity to speak with CI 1. During that interview, CI 1 provided information that contradicted and called into question the

1

very allegations now at issue. Yet counsel chose to ignore that critical information in drafting its Second Complaint.[1]

## FACTUAL BACKGROUND

On June 24, 2008, this Court dismissed Plaintiffs' First Consolidated Amended Complaint ("First Complaint") because Plaintiffs failed to adequately plead scienter pursuant to Rule 9(b) and the PSLRA. Among other failings, this Court noted that Plaintiffs' improperly relied upon group pleading and failed to demonstrate that the Individual Defendants had reason to doubt the validity of the questioned financial statements. [Doc. 132.] In an unavailing attempt to correct the deficiencies in their First Complaint, Plaintiffs' Second Complaint adds a number of allegations ostensibly based on information received from CI 1 and two

---

[1]   Even if Plaintiffs had a good faith basis to file the Second Complaint, which they did not, having received Par's Rule 11 Motion papers on September 17, 2008, including the declaration of CI 1, Plaintiffs no longer had any colorable justification for proceeding with their allegations. Yet, far from withdrawing their Second Complaint or appropriately correcting it, in their Opposition to Defendants' Motion to Dismiss the Second Complaint filed on October 6 ("Opposition"), Plaintiffs continued to put before the Court the very allegations that were directly rebutted by the declaration of CI 1, without any alteration. In addition, Plaintiffs made arguments and invited the Court to draw inferences that are insupportable in light of CI 1's declaration. Under the circumstances, the filing of their Opposition is a separate violation of Rule 11.

individuals she supervised, Confidential Informants 2 and 3 ("CI 2" and "CI 3," respectively).[2] (*See generally* Second Compl. ¶¶ 47-62, 64-66).

As explained in detail in the attached Declaration of Gabrielle Wolfson, dated September 14, 2008 ("Wolfson Declaration"), who is Plaintiffs' CI 1, these new allegations actually overstate, misconstrue, and misrepresent the information provided.[3] They go so far beyond aggressive pleading that it is appropriate to strike them pursuant to Rule 11. Although Defendants deny many of the allegations in Plaintiffs' Second Complaint and certainly deny any suggestion that they engaged in a securities fraud – they seek only to strike those allegations attributed to CIs 1, 2, and 3, which misrepresent or contradict the information CI 1 provided to Plaintiffs' Investigator.

The challenged allegations fall into the same two broad categories that Plaintiffs' use to summarize their investigative findings: the "Accounting Applications Allegations" and the "Inventory Allegations." Plaintiffs allege that:

> Defendants were informed that the accounting applications . . . were producing inflated results that could not be reconciled to the Company's original business records[.]

---

[2]  Defendants Motion to Dismiss the Second Complaint filed on September 17, 2008, sets forth in detail the failings of Plaintiffs' Second Complaint.

[3]  For brevity, only portions of the Wolfson Declaration are referenced in this memorandum of law. A more complete description of CI 1's responsibilities at Par, her interview by Plaintiffs' Investigator, and her disagreement with the challenged allegations are contained in the full text of her Declaration submitted simultaneously herewith.

3

- and -

Defendants were informed of existing and increasing amounts of obsolescent inventories in the Company's warehouse but ignored that information[.]

(Second Compl. ¶ 47.)

## I. The Accounting Applications Allegations

To support their first alleged investigative finding, Plaintiffs' rely on information attributed to CIs 1 through 3. (Second Compl. ¶ 48.) In sum, Plaintiffs allege that:

- O'Connor was aware that the Excel spreadsheet system used by Par was inaccurate, yet refused to implement the newly-developed more accurate "Gross-to-Net" software application ("GTN Application"), because it supposedly yielded consistently lower results (*Id.* at ¶¶ 49-50, 52, 55, 57-58, 61);

- The ability to make manual adjustments to the Excel spreadsheets used to prepare various components of Par's financial statements provided an opportunity for fraud (*Id.* ¶¶ 54-55, 60); and

- Defendant Tariff received daily net sales reports generated from the GTN that showed what accounts receivable reserves "should have been" and this data was compared to the information contained in the Excel spreadsheets. (*Id.* ¶¶ 51, 62).

The information CI 1 provided to Plaintiffs' Investigator did not support these allegations, but rather directly refuted or generally contradicted them. Specifically, CI 1 explained that the Excel spreadsheets were believed to be reliable and the GTN was not. (Wolfson Decl. ¶¶ 10-20.)

4

- Par's management, auditors, internal control and conversion consultants, and everyone in Par's IS and Finance departments believed that the Excel spreadsheets were accurate and reliable. (*Id.* at ¶ 13.)

- Such Excel spreadsheets are commonly used in the industry to prepare various components of financial statements. (*Id.* at ¶ 10.)

- Par's attempt to upgrade the Excel spreadsheets system by developing the GTN Application does not mean that the system previously in place was inappropriate or inaccurate in any way. (*Id.* at ¶¶ 14-15.)

- The GTN Application reflected the same percentage reserves for rebates, chargebacks, and returns as were used in the Excel spreadsheets and therefore, using the GTN would not have avoided the restatement. (*Id.* at ¶ 15-16.)

- These reserve estimates were provided by the Finance Department, not the IS Department. Neither CI 1, nor the two other confidential informants whom she supervised were in a position to know or question the percentages for the reserves that were pre-determined by the Finance Department. (*Id.* at ¶ 12.)

- The discrepancies between the GTN and the Excel spreadsheets were not because of a different analysis of reserve issues, but because of defects in the software programming by CI 2. (*Id.* at ¶ 16.)

- The GTN Application was not implemented because it was inaccurate and unreliable. Its results differed from the Excel spreadsheets even though they used the same underlying assumptions and the differences were inconsistent, sometimes higher and sometimes lower and in varying percentages. There was no consistent variation and certainly the GTN was not consistently 5-10% lower than the Excel spreadsheets. (*Id.* at ¶¶ 17-20.)

- The person responsible for developing the GTN, CI 2, was fired for incompetence (*Id.* at ¶ 21) and not as alleged because "the Company was unhappy with the numbers [the GTN application] generated" (Second Compl. ¶ 59). He had no financial background and did not understand the job of the Finance Department. CI 2 was given finance training, but failed to comprehend any of the financial concepts. (Wolfson Decl. ¶ 21.)

5

Similarly, the ability to manually adjust the Excel spreadsheets did not create a possibility to inflate Par's financials. (Wolfson Decl. ¶¶ 22- 26.) Among other reasons, CI 1 explains:

- It would have been impossible to cover the fraud in the Excel spreadsheets alone without making multiple adjustments in other automated systems that could be cross-checked and verified. (*Id.* at ¶ 23.)
- A manual adjustment to sales numbers would not have reconciled with the computerized daily sales feed from Par's customers. (*Id.* at ¶ 24.)
- Changes to Excel spreadsheets can be tracked. (*Id.* at ¶ 25.)
- The reconciliation process requires a comparison of the Excel numbers to other numbers which cannot be manually changed. (*Id.*)
- There is no known instance of anyone manipulating the spreadsheets or data. (*Id.* at ¶ 26.)

CI 1 also explains that the daily reports from the GTN Application were used for sales and operations purposes and were not reviewed by senior management meetings for financial reporting purposes. (*Id.* at ¶¶ 27-29.)

In sum, based on the information CI 1 provided to Plaintiffs' investigators, counsel could not have concluded that any of the Defendants knew either that Par's financial numbers were inflated or that those numbers could not be reconciled to Par's business records. These erroneous and unsupportable conclusions are the very cornerstone of Plaintiffs' Accounting Applications investigative findings and central to their Second Complaint. (Second Compl. ¶ 47.) Nor could Plaintiffs'

6

counsel have had a reasonable basis for the other allegations contained in Paragraphs 47-62.

## II. The Inventory Allegations

The portions of Plaintiffs' inventory allegations attributed to CI 1 (Second Compl. ¶¶ 64-66) are similarly misleading. Plaintiffs draw a negative implication from Par's efforts to replace its existing enterprise resource planning system ("ERP"), BPECS, with a JD Edwards ERP while retaining a stand-alone inventory application, Maestro. (*Id.*) The decision to update an existing system, however, is not an indication that the prior system was unreliable or inaccurate. In this case, BPECS was replaced because it was going out of business and, therefore, there would no longer provide support or upgrades. (Wolfson Decl. ¶ 31.) There was nothing wrong with the BPECS system. (*Id.*) Maestro is also an accurate and reliable program, which Par decided to keep because JD Edwards lacked certain functionalities available through Maestro. (*Id.* at ¶¶ 32-33.)

In addition, to the best of CI 1's knowledge, Par properly managed and accounted for inventory. (*Id.* at ¶ 30.) The fact that Par's warehouse was full of inventory as Plaintiffs' allege (Second Compl. at ¶ 64) is not an indication of any problem with the inventory. Rather, it was normal for the warehouse to be full. (Wolfson Decl. ¶ 30.) Par was growing very rapidly during this time and it was well-known that Par was running out of space. (*Id.*)

7

Most importantly, as CI 1 notes, Plaintiff has not made any connection between the upgrade to JD Edwards and the inventory accounting errors at issue. (*Id.*) The allegations attributed to CI 1 in Paragraphs 64-66 of the Second Complaint, therefore, not only have no reasonable basis, but can have no probative value.

## ARGUMENT

### PLAINTIFFS' ALLEGATIONS LACK EVIDENTIARY SUPPORT AND THEREFORE SHOULD BE STRICKEN UNDER RULE 11.

Rule 11 provides that by signing a pleading an attorney is certifying that, to the best of his/her "knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3).

The "reasonable inquiry" requirement mandates that counsel engage in a reasonable pre-filing investigation to ensure that their allegations are tenable. *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College of Pennsylvania*, 103 F.3d 294, 299 (3d Cir. 1996). Parties may not proffer groundless allegations in hopes of finding supporting evidence through later discovery. *Id.* ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the

8

plaintiff must have some basis in fact for the action."). *See also In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990) ("While a lawyer may rely on discovery to reveal additional facts to support claims which are well grounded in fact, Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is *no* factual support.") (emphasis in original).

Even if a suit is objectively meritorious, sanctions may be imposed if the pre-filing investigation was objectively inadequate. *Garr v. United States Healthcare*, 22 F.3d 1274, 1279 (3d Cir. 1994). No proof of subjective bad faith is required. *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 436 (D.N.J. 1999) (citing cases). Where, as here, there is no factual basis for the allegations, the complaint violates Rule 11's reasonable inquiry requirement. *Cohen*, 45 F. Supp. 2d at 435-36.

Courts have broad discretion in fashioning sanctions pursuant to Rule 11. Fed. R. Civ. P. 11(c)(4). Such sanctions can include striking of the offending allegations and awarding reasonable counsel fees and costs. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (Advisory Committee Note to Rule 11 includes striking a document among possible sanctions); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 387-88, n. 45 (D. Md. 2004) (striking allegations and dismissing claims against defendant where allegations lacked

evidentiary support); *In re Cendant Corp. Deriv. Action Litig.*, 96 F. Supp. 2d 403 (D.N.J. 2000) (ordering defendants to submit reports of fees and expenses incurred in defending motion for summary judgment in connection with determining Rule 11 sanctions to be imposed on plaintiffs); *Cohen*, 45 F. Supp. 2d at 438 (awarding attorneys fees and costs incurred in preparing motion to dismiss).

Worse than having no support for their allegations, Plaintiffs' counsel received information *contrary* to virtually all of their Accounting Application Allegations and several of their Inventory Allegations from the only confidential informant whom they allege had direct contact with the Individual Defendants, CI 1. Choosing to ignore the information learned from CI 1, counsel instead crafted allegations which touted CI 1's position at Par yet misrepresented the information she provided. Plaintiffs' Investigator was provided with more than enough information to know that the challenged allegations were misleading.

In sum, Plaintiffs' counsel could not have had a reasonable belief that the challenged allegations had evidentiary support. Since the allegations contained in Paragraphs 47-62 and 64-66 of the Second Complaint were not made in good faith, they must be stricken. If these allegations are stricken, then the Second Complaint is no different than the First, and Plaintiffs could have had no good faith belief that the filing of the Second Complaint would succeed where the First Complaint failed. The Second Amended Complaint should be dismissed for all of the reasons

contained in the September 17, 2008 Motion to Dismiss the Second Complaint, however, for the reasons stated above it should never have even been filed in the first place. Absent the improper allegations, Defendants would not have had to incur the costs associated either with this Motion or with the Motion to Dismiss the Second Complaint. Defendants should, therefore, be awarded the reasonable attorneys' fees and costs from both motions.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike the offending allegations from the Complaint and award counsel fees and costs in an amount to be determined following the entry of a sanctions order.

DATED: November 19, 2008

        GREENBERG TRAURIG, LLP

        By:   /s/ Richard A. Edlin
               Richard A. Edlin
               Eric S. Aronson
               Ronald Lefton (*admitted pro hac vice*)
               Toby S. Soli (*admitted pro hac vice*)
        200 Park Avenue, P.O. Box 677
        Florham Park, NJ 07932-0677
        Telephone: (973) 360-7900
        Facsimile: (973) 301-8410
        edlinr@gtlaw.com
        aronsone@gtlaw.com

        -and-

200 Park Avenue
New York, New York
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
leftonr@gtlaw.com
solit@gtlaw.com

*Attorneys for Defendants Par Pharmaceutical Companies, Inc., Kenneth Sawyer, and Dennis J. O'Connor*