# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

*DOCUMENT ELECTRONICALLY FILED*

In Re: PAR PHARMACEUTICAL
SECURITIES LITIGATION

**Master File No:**
**2:06-cv-03226 (ES - SCM)**

This Document Relates To:
ALL ACTIONS.

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated as of December 20, 2012 ("Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in §IV(1)(1.28) below) to the above-entitled litigation ("Litigation"): (i) the Lead Plaintiffs (as defined further in §IV(1)(1.13) below) (on behalf of themselves and each of the Class Members (as defined further in §IV(1)(1.5) below)), by and through their counsel of record in the Litigation; and (ii) Par Pharmaceutical Companies, Inc. ("Par" or the "Company"), Dennis O'Connor and Scott Tarriff (referred to collectively as the "Defendants" (defined further in §IV(1)(1.7) below)), by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined further in §IV(1)(1.22) below), upon and subject to the terms and conditions hereof and subject to the approval of the United States District Court for the District of New Jersey.

## I.     THE LITIGATION

On and after July 17, 2006, the following actions were filed in the United States District Court for the District of New Jersey ("Court") as putative class actions on behalf of persons who purchased the publicly traded securities of Par:

- *Weissmann v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-03226);

- *Castro v. Tarriff, et al.* (2:06-cv-03446);

- *Patel v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-03541);

- *Phillips v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-03974);

- *Peck v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-03866);

- *City of Hialeah Employees' Retirement System v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-04356); and

- *Erste-Sparinvest Kapitalanlagegesellschaft M B H, et al. v. Par Pharmaceutical Companies, Inc., et al.* (2:06-cv-04717).

These cases were consolidated on November 6, 2006, Docket No. 69, as *In re Par Pharmaceutical Securities Litigation*, Consolidated Civil Action No. 2:06-cv-3226, U.S.D.C., District of New Jersey.   On December 5, 2006, the Court appointed plaintiffs Snow Capital Investment Partners and WR Capital Management as co-Lead Plaintiffs.   On August 4, 2011, the Court granted a motion for Snow Capital Investment Partners and WR Capital Management to withdraw as Lead Plaintiffs, for Louisiana Municipal Police Employees Retirement System to be appointed as sole Lead Plaintiff, and for its counsel, Berman DeValerio, to be appointed as Lead Counsel.

The operative complaint in the Litigation is the Second Consolidated Amended Complaint, filed on July 23, 2008 ("Complaint").   The Complaint alleges claims against all

Defendants for violations of §10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 promulgated thereunder and against Defendants Dennis O'Connor and Scott Tarriff for violations of §20(a) of the Securities Exchange Act of 1934.

On September 17, 2008, Defendants moved to dismiss the Complaint. Following full briefing and oral argument of the motion, the Court largely denied the motion to dismiss on September 30, 2009.[1] Following the denial of Defendants' motion to dismiss, Lead Plaintiffs and Defendants engaged in extensive discovery. Over 3 million pages of documents were produced from Defendants, as well as Par's external accountants and consultants, all of which Plaintiffs' Counsel reviewed and analyzed. Further, Lead Plaintiff produced documents to Defendants and sat for a deposition. In addition, Lead Plaintiff retained a financial market consulting firm to assist in assessing loss causation and damages.

On September 9, 2011, Lead Plaintiff moved the Court for an order certifying the Litigation as a class action under Federal Rule of Civil Procedure 23. Pursuant to the briefing schedule ordered by the Court, Defendants filed their brief in opposition to the motion for class certification on November 2, 2011, and Lead Plaintiff filed its reply brief in support of class certification on December 16, 2011. On July 23, 2012, the Court granted Lead Plaintiff's motion for class certification, appointed LAMPERS as the sole class representative, and appointed Berman DeValerio as Class Counsel.

---

[1] The Court dismissed all claims against Kenneth Sawyer, formerly Par's Chief Executive Officer and Chairman of its Board of Directors, but otherwise sustained all of Plaintiffs' claims against the remaining defendants.

On October 24, 2012, the Settling Parties held a mediation with Jed Melnick, Esq., a mediator with extensive experience mediating complex cases like the Litigation. After extensive, arm's-length negotiations during the mediation, the parties reached an agreement in principle to settle the Litigation.

## II.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied and continue to deny each and all of the substantive allegations of wrongdoing and liability pleaded against them in the Complaint. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied, *inter alia*, the allegations that Lead Plaintiff and the Class have suffered damage or that Lead Plaintiff and the Class were harmed by the conduct alleged in the Litigation. Defendants believe that their defenses to the claims asserted against them are strong and that they would prevail either at the summary judgment stage or at trial. Defendants, however, have taken into account the uncertainty and risks of litigation, especially in a complex action such as this Litigation, as well as the difficulties and disruption of normal business activities inherent in such litigation. Defendants also have taken into account that the defense of the Litigation may be protracted and expensive. This Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Defendant with respect to any claim or of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Defendants' decision to settle the Litigation was based on the above considerations and Defendants'

determination that it is desirable and beneficial that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.    CLAIMS OF THE LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date, through the review of documents produced by the Defendants and third parties, supports the claims. Lead Plaintiff, however, recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and appeals. Lead Plaintiff also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. In addition, Lead Plaintiff has taken into account the difficulties posed by its burden of proof and the need to rebut possible defenses to the violations asserted in the Litigation. Lead Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on its evaluation, Plaintiff's Lead Counsel has determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of Lead Plaintiff and the Class.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for itself and the Class Members) and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and

the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows:

**1.    Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Par" or the "Company" means Par Pharmaceutical Companies, Inc., including each of its present and former subsidiaries and affiliates.

1.2    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation and who submits a valid Proof of Claim and Release Form, in such form and manner, and within such time, as the Court shall prescribe, to the Claims Administrator.

1.3    "Claims Administrator" means the firm of A.B. Data, Ltd. located at 600 A.B. Data Drive, Milwaukee WI 53217.

1.4    "Class" means all persons or entities (and their beneficiaries) who purchased or otherwise acquired the publicly traded securities of Par between July 23, 2001, and July 5, 2006, inclusive. Excluded from the Class are anyone named as a Defendant in this action; members of the immediate family of any such Defendant; any entity in which any such Defendant or family member has or had a controlling interest; the former and current officers and directors of Par; or the legal affiliates, representatives, controlling persons, predecessors-in-interest, heirs, assigns, or any other successors-in-interest of any such excluded party. Also excluded from the Class are those persons who timely and validly request exclusion from the Class pursuant to the "Notice of Pendency and Proposed Settlement of Class Action" to be sent to potential Class Members.

1.5      "Class Member" or "Class Members" mean any person who falls within the definition of the Class as set forth in ¶1.4 of the Stipulation.

1.6      "Class Period" means the period commencing on July 23, 2001, and ending on July 5, 2006, inclusive.

1.7      "Defendants" means Par, Dennis O'Connor, and Scott Tarriff.

1.8      "Defendants' Counsel" means the law firms of Greenberg Traurig LLP and Pepper Hamilton LLP.

1.9      "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.10     "Escrow Account" means the escrow account to be established by Plaintiff's Lead Counsel and into which the Settlement Fund shall be paid as provided by ¶2.1 of the Stipulation.

1.11     "Escrow Agent" means the law firm of Berman DeValerio, or its successor(s).

1.12     "Final" means when the last of the following with respect to the Order and Final Judgment, substantially in the form of Exhibit A attached hereto, shall occur: (i) the expiration of the time for the filing of any motion to alter or amend the Order and Final Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Order and Final Judgment without any appeal having been filed; and (iii) if such motion to alter or amend is filed or if an appeal is filed or noticed, then at the moment that (a) the Order and Final Judgment has been finally affirmed, the time for a petition for writ of

certiorari to review the Order and Final Judgment has expired or, if certiorari is granted, the judgment following review pursuant to that grant has been finally affirmed; or (b) any appeal from the Order and Final Judgment or any proceeding on certiorari to review the Order and Final Judgment has been finally dismissed. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of attorneys' fees and expenses or the Plan of Allocation of the Settlement Fund. Any proceeding or Order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of distribution and/or application for attorneys' fees, costs, or expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

1.13     "Lead Plaintiff" means Louisiana Municipal Police Employees' Retirement System.

1.14     "Preliminary Approval Order" means the Order described in ¶3.1 hereof.

1.15     "Order and Final Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit A.

1.16     "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.17    "Plaintiffs" means all of the plaintiffs that have appeared in the Litigation.

1.18    "Plaintiffs' Counsel" means any counsel that have appeared for any of the Plaintiffs in the Litigation.

1.19    "Plaintiff's Lead Counsel" means the law firm of Berman DeValerio, or its successor(s).

1.20    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund to be proposed by Plaintiff and Plaintiff's Lead Counsel whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement; Taxes and Tax Expenses; such attorneys' fees, costs, expenses, and interest as may be awarded by the Court; and any Compensatory Award to Lead Plaintiff as may be awarded by the Court. No Plan of Allocation is part of the Stipulation, and Defendants and their Related Parties shall have no responsibility or liability with respect thereto.

1.21    "Related Parties" means, with respect to each Defendant, the immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, general partners, limited partners, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Defendant or in which any Defendant has or had a controlling interest, and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, general partners, limited partners, employees, officers, directors, attorneys, assigns, legal representatives, insurers,

reinsurers, and agents of each of them, as well as all current and former Par directors and officers and each of their immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, general partners, limited partners, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them.

     1.22     "Released Claims" means any and all rights, debts, demands, claims, causes of action, or liabilities whatsoever (including without limitation any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities), whether based on federal, state, local, statutory, common law, foreign law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, known or unknown (including "Unknown Claims" as defined in ¶1.30 below), at law or in equity, matured or unmatured, whether class and/or individual in nature, including both known claims and Unknown Claims, that relate to or in any way arise in connection with the purchase or other acquisition, or the sale or other disposition, or decision to hold or holding, of the securities of Par during the Class Period, including, without limitation, those that (a) Lead Plaintiff or any member of the Class asserted, or could have asserted in this Litigation against any of the Released Persons; or (b) could have been asserted in this Litigation, or in any other action or forum by Lead Plaintiff and/or the Class Members or any of them against any of the Released Persons that arise out of, are based upon, or are in any way related, directly or indirectly, to any of the facts, matters, allegations, transactions, events, disclosures, statements, acts or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint or that

could have been alleged in the Complaint; ***provided however***, that the Released Claims do not include (i) any claims to enforce the terms of this Stipulation; (ii) any claims by Par or any of its present or former directors, officers, or employees (or any other person or entity who is covered by the relevant insurance policies) against the current or former insurers of Par; or (iii) any claims asserted in *Inserto v. Tarriff*, 2:06-cv-05008-PGS-ES (D.N.J.) (derivative action).

      1.23      "Released Persons" means any and all of the Defendants, each of their insurers with regard to this Litigation, Kenneth Sawyer, and each and all of their Related Parties.

      1.24      "Settled Defendants' Claims" means all claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Litigation or any forum by the Defendants against Lead Plaintiff, Class Members, or Plaintiffs' Counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Litigation (except for claims to enforce the Settlement); ***provided, however***, that "Settled Defendants' Claims" shall not include any claims to enforce the terms of this Stipulation.

      1.25      "Settlement" means the settlement of the Litigation as set forth in this Stipulation.

      1.26      "Settlement Amount" means Eight Million One Hundred Thousand Dollars ($8,100,000).

      1.27      "Settlement Fund" means the Settlement Amount, to be provided in cash, plus any interest that may accrue thereon as provided for herein.

1.28      "Settling Parties" means, collectively, each of the Defendants and the Lead Plaintiff on behalf of itself and each of the Class Members.

1.29      "Stipulation" means the executed Stipulation of Settlement in the action captioned *In re Par Pharmaceutical Securities Litigation*, Civil Action No. 2:06-CV-03226-ES-SCM (D.N.J.).

1.30      "Unknown Claims" means any of the Released Claims that Lead Plaintiff or any Class Member does not know or suspect to exist in such party's favor at the time of the release of the Released Persons that, if known by such party, might have affected such party's decisions concerning the Settlement.  With respect to any and all Released Claims, upon the Effective Date, Lead Plaintiff and the Class Members shall expressly waive, and by operation of the Order and Final Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Class Members, by operation of the Order and Final Judgment, shall have expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to California Civil Code §1542.  The Class Members may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Released Claims, but the

Class Members, upon the Effective Date, by operation of the Order and Final Judgment, shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including without limitation conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

      1.31      "Compensatory Award to Lead Plaintiff" shall mean the amount, if any, awarded by the Court pursuant to §27A(2)(b)(4) of the Private Securities Litigation Reform Act in compensation for the time incurred by Lead Plaintiff in connection with this litigation for the benefit of the Class.

      **2.**      **The Settlement**

            **A.**      **The Settlement Fund**

      2.1      In full and final settlement of all Released Claims against the Released Persons, Defendants shall pay or cause to be paid to the Class, the Settlement Amount as follows:

            (a)      Within fifteen (15) business days of Defendants' Counsel's receipt of all of the following:

                  (i) a signed Order from the Court preliminarily approving the Settlement;

                  (ii) payment instructions to the Settlement Fund for both wire transfer and for check payment, as the payors may elect; and

(iii) the tax identification number for the Settlement Fund;

Par, on behalf of all Defendants, shall pay or cause to be paid by either wire transfer or check, or any combination thereof, the aggregate total sum of eight million one hundred thousand dollars ($8,100,000) into the Escrow Account.

### B.    The Escrow Agent

2.2    The Escrow Agent shall invest any funds in excess of two-hundred thousand dollars ($200,000) deposited into the Settlement Fund pursuant to ¶2.1 above in instruments backed by the full faith and credit of the government of the United States of America, including without limitation those issued by the Certificate of Deposit Account Registry Service ("CDARS") or the Governmental National Mortgage Association ("GNMAs" or "Ginnie Maes"), and shall collect and reinvest all interest accrued thereon in the same instruments.  Any funds held in escrow in an amount of less than $200,000 may be held in an interest bearing bank account insured by the FDIC.

2.3    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an Order of the Court, or with the prior written agreement among Plaintiff's Lead Counsel and Defendants' Counsel.

2.4    Subject to further Order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

2.5    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as

such funds shall be distributed pursuant to the Stipulation and/or further Order(s) of the Court.

2.6     All costs and expenses associated with the Settlement, including without limitation any taxes, administrative costs, and costs of providing notice of the proposed Settlement to the members of the Class, shall be paid from the Settlement Amount, and in no event shall any of the Released Persons, Lead Plaintiff, members of the Class, or their counsel bear any responsibility for any such costs or expenses.

2.7     Within five (5) business days after payment of the Settlement Amount into the Escrow Account pursuant to ¶2.1 hereof, the Escrow Agent may establish a "Notice and Administration Fund" and may deposit up to $200,000 from the Settlement Fund in it. The Notice and Administration Fund may be used by the Escrow Agent without further consent of Defendants or Order of the Court to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release Forms, and paying Taxes (as defined in ¶2.9(c) hereof), escrow fees and costs, if any.  The Notice and Administration Fund also may be invested and earn interest as provided for in ¶2.2 of this Stipulation.

2.8     The Escrow Agent shall pay from the Notice and Administration Fund (and from the Settlement Fund to the extent that costs and expenses exceed the balance contained in the Notice and Administration Fund), without further approval from Defendants or the Court, the reasonable costs and expenses associated with identifying

members of the Class and effecting mail notice and publication notice to the Class, and the administration of the Settlement, including without limitation the actual costs of publication, printing, and mailing the Notice, reimbursements to nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, provided that the foregoing costs and expenses shall not exceed $200,000. To the extent the foregoing costs and expenses do exceed $200,000, prior to the Effective Date, Plaintiff's Lead Counsel shall apply to the Court for an order allowing for reimbursement of the foregoing costs and expenses in excess of $200,000.

### C.  Taxes

2.9     (a)     The Settling Parties and their counsel agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended ("IRS Code"). It shall be the responsibility of the Escrow Agent to prepare and deliver in a timely manner the necessary and proper documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the IRS Code and the Treasury regulations promulgated thereunder, the Escrow Agent shall be designated as the

"administrator" of the Settlement Fund. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.9(a) hereof) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes as defined in ¶2.9(c) hereof (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)     All: (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.9 (including without limitation expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund. In no event shall Defendants or their Related Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and their Related Parties harmless for Taxes and Tax Expenses (including without limitation Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid

by the Escrow Agent out of the Settlement Fund without prior Order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amount, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants nor their Related Parties are responsible therefor or liable with respect thereto. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.9.

(d)     For the purpose of this ¶2.9, references to the Settlement Fund shall include both the Settlement Fund and the Notice and Administration Fund and shall also include any earnings thereon.

### D.     Termination of Settlement

2.10     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, including without limitation in the event the Order and Final Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund (including accrued interest), less reasonable expenses actually incurred or due and owing from the Settlement Fund for the notice and administration of the Settlement pursuant to ¶2.8 above, shall be refunded to the parties that paid such amounts into the Settlement Fund, on pro-rata basis based on the amount each party contributed, plus accrued interest attributable to that amount, by wire transfer in accordance with the instructions to be

provided by Defendants' Counsel within five (5) business days of the availability of the monies from the investments authorized herein.

**3.      Preliminary Approval Order and Settlement Hearing**

3.1      Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and Plaintiff's Lead Counsel shall apply for entry of an Order ("Preliminary Approval Order"), substantially in the form and content of Exhibit B attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, approval for the mailing of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), substantially in the form of Exhibit B-1 attached hereto, and approval of the publication of a Summary Notice, substantially in the form of Exhibit B-2 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the general terms of the Fee and Expense Application as defined in ¶6.1 below, and the date of the Settlement Hearing as defined in ¶3.2 below.

3.2      The Settling Parties request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, the Court hold a hearing ("Settlement Hearing") and finally approve the Settlement of the Litigation as set forth herein.  At the Settlement Hearing, Plaintiff's Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.3     Except for Defendants' obligation to pay or cause payment of the Settlement Fund into the escrow account as set forth herein and to cooperate in the production of information with respect to the identification of Class Members from Par's shareholder transfer records, as provided herein, Defendants and their Related Parties shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund, as defined in ¶5.3 below.

**4.     Releases and Covenant Not to Sue**

4.1     Upon the Effective Date, as defined in ¶1.9 hereof, Lead Plaintiff, each and all of the Class Members, and Plaintiffs' Counsel shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all of the Released Persons, and shall forever be enjoined from prosecuting the Released Claims, regardless of whether such Class Member executes and delivers a Proof of Claim and Release.

4.2     Upon the Effective Date, as defined in ¶1.9 hereof, each of the Defendants shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, each and all of the Class Members, and Plaintiffs' Counsel from all Settled Defendants' Claims, and shall forever be enjoined from prosecuting such claims.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court and/or Plaintiff's Lead Counsel as may be necessary or as circumstances may

require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.

5.2    Upon the Order and Final Judgment, the Settlement Fund shall be applied as follows:

(a)    to pay all the remaining costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, soliciting Class claims, assisting with the filing of claims, processing Proof of Claim and Release Forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any;

(b)    to pay Plaintiff's Lead Counsel's attorneys' fees, expenses, and costs with interest thereon ("Fee and Expense Award") and Lead Plaintiff's expenses, if and to the extent allowed by the Court; and

(c)    to pay any Compensatory Award to Lead Plaintiff.

5.3    Upon the Effective Date, as defined in ¶7.1, and thereafter, and in accordance with the Stipulation of Settlement and/or all applicable Orders of the Court to distribute the balance of the Settlement Fund, net of the above costs, expenses, attorneys' fees, and any Compensatory Award to Lead Plaintiff ("Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court. The Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)    to pay the Taxes and Tax Expenses described in ¶2.9 above.

(b)      Each Authorized Claimant shall be required to submit a Proof of Claim and Release Form, substantially in a form approved by the Court, supported by such documents as are designated therein, including proof of the transactions claimed, or such other documents or proof as the Claim Administrator, in its discretion, may deem acceptable;

(c)      All Proof of Claim and Release Forms must be submitted by the date specified in the Notice unless such period is extended by Order of the Court.  Any Class Member who fails to submit a Proof of Claim and Release Form by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by Order of the Court, a later-submitted Proof of Claim and Release Form by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims.  A Proof of Claim and Release Form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator.  Notwithstanding the foregoing, Plaintiff's Lead Counsel may, in its discretion, accept for processing late submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed;

(d)      Each Proof of Claim and Release Form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and

the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(e)     Proof of Claim and Release Forms that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim and Release Form, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the Proof of Claim and Release Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose Proof of Claim and Release Forms it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (f) below;

(f)     If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (e) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Plaintiff's Lead Counsel shall thereafter present the request for review to the Court; and

(g)     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Notice and as approved by the Court.

5.4     Except for Defendants' obligation to pay or cause payment of the Settlement Fund into the Escrow Account as set forth herein and to cooperate in the

production of information with respect to the identification of Class Members from Par's shareholder transfer records, as provided herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the administration, investment, or distribution of the Settlement Fund, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.5     No Person shall have any claim against Lead Plaintiff, the Escrow Agent, Plaintiff's Lead Counsel, or any claims administrator based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, or further Order(s) of the Court.

5.6     If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining shall be re-distributed among Authorized Claimants in an equitable and economic manner, if feasible, until all Authorized Claimants have recovered 100% of their losses, as determined under the Plan of Allocation, and any remainder donated to a legal non-profit organization to be proposed by Plaintiff's Lead Counsel and approved by the Court.

5.7     It is understood and agreed by the Settling Parties that any proposed plan of allocation of the Net Settlement Fund, including without limitation any adjustments to an Authorized Claimant's claim set forth therein, is not a necessary term of the Stipulation and

is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any Order or proceeding relating to a plan of allocation shall not operate to terminate or cancel the Stipulation or affect the Finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth therein, or any other Orders entered pursuant to the Stipulation.

**6.     Plaintiff's Lead Counsel's Attorneys' Fees and Expenses**

6.1     Plaintiff's Lead Counsel may submit an application or applications ("Fee and Expense Application") for distributions to it from the Settlement Fund for:  (a) an award of attorneys' fees from the Settlement Fund;  (b) payment of expenses and costs incurred in connection with prosecuting the Litigation;  (c) any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Settlement Fund;  and (d) the grant of a Compensatory Award to Lead Plaintiff by the Court.  Plaintiff's Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2     The attorneys' fees, expenses, and costs, including the fees of experts and consultants, as awarded by the Court, shall be paid to Plaintiff's Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an Order awarding such fees and expenses and enters the Order and Final Judgment.  Plaintiff's Lead Counsel shall thereafter allocate, subject to the conditions below, the attorneys' fees among Plaintiffs' Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Litigation.  In the event that the Effective

Date does not occur, or the Order and Final Judgment or the Order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, within five (5) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, shall each be jointly and severally liable to refund all of the fees, expenses, and costs previously paid to Plaintiffs' Counsel, and any Compensatory Award previously paid to Lead Plaintiff, from the Settlement Fund, plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification; *provided however,* that Plaintiffs' Counsel shall not be liable to refund any funds used to pay for costs associated with the notice and administration of this Settlement. Each such Plaintiffs' Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders (a) are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph and (b) are jointly and severally liable for the full amount of all fees, expenses, and costs paid from the Settlement Fund, subject to the restrictions set forth in this paragraph. Without limitation, Plaintiffs' Counsel and their partners, shareholders, and/or members agree that the Court may, upon application of Defendants and notice to Plaintiffs' Counsel, summarily issue Orders, including without limitation judgments and attachment Orders, and may make appropriate findings of or sanctions for contempt, should such law firm or its partners, shareholders, or members fail to repay fees and expenses in a timely manner pursuant to this paragraph.

6.3     No appeal from an Order relating to the Fee and Expense Application or reversal or modification thereof shall operate to terminate or cancel the Stipulation, or affect or delay the Finality of the Order and Final Judgment approving the Stipulation and the Settlement of the Litigation set forth herein.

6.4     Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel from the Settlement Fund.

6.5     Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel of payments from the Settlement Fund, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)     Defendants have made or caused the contributions to be made to the Settlement Fund, as required by ¶2.1 above;

(c)     the Court has approved this Stipulation, following notice to the Class Members and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(d)     the Court has entered the Order and Final Judgment, or a judgment substantially in the form of Exhibit A attached hereto;

(e)     the Order and Final Judgment has become Final, as defined in ¶1.12 hereof; and

(f)     the Settlement shall not have been terminated by any of the parties hereto.

7.2     Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants and their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

7.3     The Settling Parties shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Order and Final Judgment in any material respect; or (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals for the Third Circuit or the U.S. Supreme Court; or by Defendants for good cause prior to the entry of an Order and Final Judgment.

7.4     The Settlement Hearing shall be held at a date and time convenient to the Court, at the United States District Court for the District of New Jersey, Martin Luther King Federal Building and U.S. Courthouse, Newark, New Jersey 07101, to determine whether the proposed Settlement of the Litigation on the terms and conditions provided for

in this Stipulation is fair, reasonable, and adequate as to the Class and should be approved by the Court; whether an Order and Final Judgment as provided in ¶1.15 should be entered herein; whether a proposed plan of allocation should be approved; and to determine the amount of fees and expenses that should be awarded to Plaintiff's Lead Counsel and the Compensatory Award to be awarded to Lead Plaintiff.

7.5     Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or shall not become effective for any reason, within  five (5) business days after written notification of such event is sent by Defendants' Counsel or Plaintiff's Lead Counsel to the Escrow Agent, subject to the terms of ¶2.10 hereof, the Settlement Fund (including accrued interest), less any expenses and/or costs that either have been properly paid pursuant to ¶2.7 or ¶2.8 hereof or are determined to be chargeable to the Settlement Fund for the notice and administration of the Settlement pursuant to ¶2.8 herein, shall be refunded by the Escrow Agent to the parties that paid such amounts into the Settlement Fund, plus accrued interest attributable to that amount, by wire transfer pursuant to written instructions from Defendants' Counsel.  At the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to Defendants.

7.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation immediately prior to the execution of this Stipulation.  In such event, the

terms and provisions of the Stipulation, with the exception of ¶¶7.5-7.8; ¶8.2; ¶9.1 (including all subparts); & ¶10.16 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or Order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No Order of the Court or modification or reversal on appeal of any Order of the Court concerning a proposed plan of allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Plaintiff or Plaintiff's Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.7      If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Plaintiff's Lead Counsel shall have any obligation to repay any amounts actually and properly paid from the Settlement Fund for the notice and administration of the Settlement pursuant to ¶2.8 hereof. In addition, any expenses already incurred and properly chargeable to the Settlement Fund for the notice and administration of the Settlement pursuant to ¶2.8 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶7.5 hereof.

**8.      No Admission of Wrongdoing**

8.1      This Stipulation, whether or not consummated, and any negotiations, discussions, or proceedings in connection herewith is not and shall not be construed as any admission of liability or wrongdoing, and shall not be:

(a)     offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Plaintiffs or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b)     offered or received against any Defendant as evidence of a presumption, concession, admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant, or against Lead Plaintiff or any Class Member as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)     offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)     construed against Defendants, Lead Plaintiff, or the Class as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

**9.     Miscellaneous Provisions**

9.1     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Settling Parties as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

9.3     No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.4     Except as otherwise provided for herein, each party shall bear his, her, or its own costs except that Lead Plaintiff and Par agree to split equally the cost of $7,500 to obtain the list of class members from Par's former transfer agent.

9.5     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Order and Final Judgment will contain a statement that, during the course of the Litigation, the Settling Parties and their

respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.6     Defendants and/or their Related Parties may file the Stipulation and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.7     Except as otherwise provided for herein, all agreements made and Orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.8     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.9     Plaintiff's Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized on behalf of the Class to enter into any modifications or amendments to the Stipulation that it deems appropriate.

9.10    Each counsel or other person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

9.11    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

9.12    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.13    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.14    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

9.15    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New Jersey, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New Jersey without giving effect to that State's choice-of-law principles.

9.16    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.17    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of December 20, 2012.

BERMAN DEVALERIO

Norman Berman
Bryan A. Wood
Justin N. Saif
One Liberty Square
Boston, Massachusetts 02109
617.542.8300 (Telephone)
617.542.1194 (Facsimile)
nberman@bermandevalerio.com
bwood@bermandevalerio.com
jsaif@bermandevalerio.com

*Lead Counsel for Lead Plaintiffs*

GREENBERG TRAURIG, LLP

Richard A. Edlin
Ronald D. Lefton
Eric S. Aronson
200 Park Ave.
New York, NY 10166
212.801.9200 (Telephone)
212.801.6400 (Facsimile)
edlinr@gtlaw.com
leftonr@gtlaw.com
aronsone@gt.aw.com

*Attorneys for Defendants Par*
*Pharmaceutical Companies,*
*Inc. and Dennis O'Connor*

PEPPER HAMILTON LLP

Frank C. Razzano
600 Fourteenth Street, N.W.
Washington, D.C. 20005-2004
202.220.1200 (Telephone)
202.220.1665 (Facsimile)
razzanof@pepperlaw.com

*Attorneys for Defendant Scott*
*Tarriff*

- 36 -