UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re PAR PHARMACEUTICAL SECURITIES LITIGATION | Civil Action No.: 06-3226 (ES)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court upon request by Lead Plaintiff Louisiana Municipal Employees Retirement System ("Lead Plaintiff" or "LAMPERS"), pursuant to Fed. R. Civ. P. 23(e), for final approval of the Stipulation of Settlement (Stipulation of Settlement "Settlement," D.E. 306-2) with Defendants Par Pharmaceutical Companies, Inc. ("Par"), Dennis J. O'Connor, and Scott Tarriff (collectively, "Defendants") and approval of the proposed Plan of Allocation for the settlement proceeds. (Motion for Final Approval of Class Action Settlement and For Approval of Plan of Allocation, D.E. No. 316). Also pending before this Court is Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff.[1] (Motion for an Award of Attorneys' Fees,

---

[1] Former Co-Lead Counsel Federman & Sherwood also submitted a Motion for Attorneys' Fees and Reimbursement of Expenses, (D.E. No. 318); however, Federman & Sherwood withdrew the motion during the July 2, 2013 fairness hearing and all counsel agreed to meet and confer regarding the allocation of the 30% attorneys' fee request, (July 2, 2013 Fairness Hearing Tr. 25:22-26:2, 29:23-30:18). Furthermore, Defendants do not oppose the Motion for Final Approval of Class Action Settlement and For Approval of Plan of Allocation, and take no position on the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff. (*Id.* at 7:20-8:2).

1

Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff, D.E. No. 317). The Court held a fairness hearing on July 2, 2013 at 10:30 a.m.

For the reasons set forth below, the Court will approve the Settlement and the Plan of Allocation and grant Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff.

**I.      Background**

This class action involves allegations of securities fraud brought on behalf of investors in Par, a Delaware corporation headquartered in New Jersey, which develops, manufactures, and distributes generic and branded drugs. (Lead Plaintiff's Second Consolidated Amended Complaint ("SAC") ¶ 2, D.E. No. 133). Lead Plaintiff, on behalf of itself and each of the class members, alleged that Defendants issued materially false and misleading statements concerning Par's financial performance and prospects. (*Id.*).

On July 5, 2006, Par announced plans to restate its financial statements for fiscal years 2004, 2005, and the first quarter of 2006 to correct "an understatement of accounts receivable reserves which resulted primarily from delays in recognizing customer credits and uncollectible customer deductions." (SAC ¶ 4). In response, Par common stock dropped from $18.25 per share to $13.47 per share. (SAC ¶ 5). On December 14, 2006, Par announced additional plans to restate its financial statements for the period prior to 2004 and previously reported revenues through the first quarter of 2006. (SAC ¶ 8). On March 13, 2007, Par filed its restatement for 2001 through 2005. (SAC ¶ 9). On July 10, 2007, Par filed its restatement for the first quarter of 2006. (*Id.*). In its restatements, Par admitted that it had understated its accounts receivable reserves by more than $83.5 million and overvalued its inventories by more than $9.9 million. (*Id.*).

As a result, Lead Plaintiff alleged that Defendants violated § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5. (*Id.* ¶ 204). Lead Plaintiff further alleged that Defendants Dennis O'Connor and Scott Tarriff violated § 20(a) of the Securities Exchange Act of 1934. (*Id.* ¶ 208).

On August 8, 2011, the Court appointed LAMPERS as sole Lead Plaintiff and Berman DeValerio as sole Lead Counsel.[2] (D.E. No. 258). On July 23, 2012, the Court granted Lead Plaintiff's Motion for Class Certification. (Opinion & Order, D.E. Nos. 286-87).

Thereafter, on October 24, 2012, LAMPERS, on behalf of itself and the class, and Defendants engaged in mediation with Jed D. Melnick, Esq. of Judicial Arbitration and Mediation Services ("JAMS"). (Settlement 4). After extensive, arm's-length negotiations during the mediation, the parties reached an agreement in principle to settle the litigation. (*Id.*).

The terms of the Settlement provide for payments to members of the class, i.e., persons who purchased Par stock from July 23, 2001 through July 5, 2006. (*Id.* ¶ 1.4). Specifically, the Settlement comprises an aggregate total sum of $8.1 million. (*Id.* ¶ 2.1). The parties agree that this figure represents approximately 7% of total class-wide damages. (Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and for Approval of Plan of Allocation ("Pl. Br. for Settlement Approval") 1, D.E. No. 316-1).

The Court now turns to Lead Plaintiff's request for approval of the Settlement and Plan of Allocation and Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Award to Lead Plaintiff.

---

[2] On August 8, 2011, the Court vacated the November 15, 2006 Order, thereby removing Snow Capital Investment Partners and WR Capital Management as Co-Lead Plaintiffs and Federman & Sherwood and Robbins Geller Rudman & Dowd LLP as Co-Lead Counsel. (D.E. No. 81).

3

## II. Standard of Review

### A. Settlement and Plan of Allocation Approval

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). In *Girsh*, the Third Circuit identified nine factors that a district court should consider when determining whether a settlement is fair, adequate, and reasonable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

"These factors are a guide and the absence of one or more does not automatically render the settlement unfair. Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*." *In re Am. Family Enters.,* 256 B.R. 377, 418 (D.N.J. 2000) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig*., 176 F.R.D. 158, 184 (E.D. Pa. 1997)).

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citation & internal quotation marks omitted); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

### B. Attorneys' Fees

Pursuant to 29 U.S.C. § 216, the Court is authorized to award reasonable attorneys' fees to be paid by the defendant and costs of the action. 29 U.S.C. § 216. As recognized by the Supreme Court, "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That said, "it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that [a reviewing court has] a sufficient basis to review for abuse of discretion." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000).

In *Gunter*, the Third Circuit identified several factors that a district court should consider when evaluating a motion for an award of attorneys' fees. *Id.* at 195 n.1. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs counsel; and (7) the awards in similar cases.

5

*Id.*; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). "These fee award factors need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Rite Aid,* 396 F.3d at 301 (citation & internal quotation marks omitted). Nevertheless, district courts must "engage in robust assessments of the fee award reasonableness factors when evaluating a fee request." *Id.* at 302.

## III.   Discussion

### A.   Settlement

The Court first turns to whether the Settlement and Plan of Allocation are fair, adequate, and reasonable in light of the *Girsh* factors. As detailed below, this Court finds that the balance of factors weighs in favor of approval of both the Settlement and Plan of Allocation.

#### 1.   Complexity, Expense and Likely Duration of Litigation

The first factor set forth in *Girsh* addresses the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (citation & internal quotation marks omitted). This factor weighs in favor of approval where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin Sodium II Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004).

Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate. *See, e.g.*, *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[T]his has been, and will continue to be, a very expensive case to prosecute and defend in light of the complexity of the issues and necessity for expert witnesses."). Here, "[s]ignificant, complex, expensive, and lengthy litigation remained ahead . . . including summary judgment, pre-trial motions, and post-trial appeals, as well as additional discovery and depositions to prepare for

6

summary judgment and trial." (Pl. Br. for Settlement Approval 8). This mater has been pending for seven years, and even if Lead Plaintiff were to succeed at trial, "necessary delay through a trial, post-trial motions, and the appellate process would likely deny the Class any recovery for years, an unfavorable result for all parties." *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 642 (D.N.J. 2004).

Given the procedural and substantive complexities inherent in securities fraud class actions, and the time and expense necessarily involved in fully adjudicating this matter, the Court finds that this factor weighs decidedly in favor of approving the Settlement.

### 2. The Reaction of the Class to the Settlement

The second factor set forth in *Girsh* "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Where "no Class members have sought to exclude themselves from the class," this factor "weighs strongly in favor of approval." *In re Datatec Sys. Inc. Sec. Litig.*, No. 4-525, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007); *see also Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 331 (E.D. Pa 2007) ("[T]otal absence of objections argues in favor of the proposed settlement."). This factor is especially critical to the Court's fairness analysis, as the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989).

On February 15, 2013, Lead Counsel sent notice to 8,186 persons identified as potential class members and nominees for beneficial owners. (Pl. Br. for Settlement Approval 11). By May 29, 2013, Lead Counsel sent and/or delivered an additional 76,386 notice packets on behalf of banks, brokers, and other nominees through the fulfillment request process. (*Id.* at 11-12).

On February 25, 2013, the Summary Notice was published in the national edition of *Investor's Business Daily* and issued over the *PR Newswire*. (*Id.* at 12). Objections to the Settlement or requests for exclusions from the class were to be postmarked no later than April 1, 2013. (*Id.*).

Lead Counsel did not receive a single objection to the Settlement, nor did Lead Counsel receive any valid requests for exclusion. (*Id.*). Given the size of the class, the lack of any objections or exclusions strongly supports approval of the Settlement.

### 3. Stage of the Proceedings and the Amount of Discovery Completed

The third factor set forth in *Girsh* considers the "degree of case development that class counsel have accomplished prior to settlement," including the type and amount of discovery already undertaken. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995); *see also Prudential,* 148 F.3d at 319 ("To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken."). In short, this factor considers whether the amount of discovery completed permits counsel to "have an adequate appreciation of the merits of the case before negotiating." *Id.*

On July 23, 2012, the Court granted Lead Plaintiff's Motion for Class Certification. (Order Granting Motion to Certify Class, D.E. No. 287). Immediately thereafter, Lead Counsel entered into negotiations with Defendants over document requests and served subpoenas on numerous non-parties, including Par's outside auditors, consultants, attorneys, and software vendors. (Pl. Br. for Settlement Approval 12). As a result, Lead Counsel "received, reviewed, and analyzed hundreds of thousands of pages of relevant documents." (*Id.*). Lead Counsel engaged in highly-involved factual and legal investigations, which included interviewing former Par employees and retaining an experienced economist to assess likely damages. (*Id.*).

Lead Plaintiff avers, and this Court agrees, that the Settlement was reached only after "extensive factual investigation and comprehensive legal briefing," thereby providing Lead Plaintiff with a thorough understanding of the strengths and weaknesses of the case. (*Id.*; *see also* July 2, 2013 Fairness Hearing Tr. 20:24-22:9). Therefore, this factor weighs in favor of approving the Settlement.

### 4. The Risks of Establishing Liability

The fourth factor set forth in *Girsh* considers "what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant*, 264 F.3d at 237. (citation & internal quotation marks omitted). Courts must "attempt to balance the likelihood of success at trial against the benefits of immediate settlement." *Rent-Way*, 305 F. Supp. 2d at 504; *see also Prudential*, 148 F.3d at 319 (finding this factor to weigh in favor of approval because of plaintiffs' foreseeable burden at trial).

In order to prevail on its claims, Lead Plaintiff "would have to establish, among other elements, that Defendants' public statements contained misrepresentations or omissions, those misrepresentations or omissions were material, that Defendants acted with scienter, and that Defendants' statements caused losses." (Pl. Br. for Settlement Approval 14). Lead Plaintiff submits that its ability to prove Defendants' scienter is unclear. (*Id.*). Moreover, "Defendants vigorously contend that Lead Plaintiff would not be able to establish scienter," which requires Lead Plaintiff to prove "either knowing or reckless misconduct." (*Id.* at 14-15). The Third Circuit has adopted the following standard for recklessness under Rule 10b-5:

> [H]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

9

*U.S. S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 192 (3d Cir. 2000) (citation omitted); *see also Datatec*, 2007 WL 4225828, at *4 ("Lead Plaintiff[] would face the formidable task of proving scienter and loss of causation.").

Given these significant risks to establishing liability at trial, the Court finds that the fifth factor weighs in favor of approving the Settlement.

### 5. The Risks of Establishing Damages

Like the fourth factor, the fifth factor set forth in *Girsh* "attempts to measure the expected value of litigating the action rather than settling it at the current time." *General Motors Corp.*, 55 F.3d at 816. The Court compares a potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. "Normally, proving damages involves many of the same risks as proving liability because the former is contingent upon the latter." *Rent-Way*, 305 F. Supp. 2d at 505 (citation & internal quotation marks omitted).

It is axiomatic that both Lead Plaintiff and Defendants would rely on expert testimony to assist the jury in determining damages at trial. Courts in this district have recognized that competing expert testimony presents significant risks to Lead Plaintiff's success in establishing damages. *See Cendant*, 264 F.3d at 239 ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *see also Rent-Way*, 305 F. Supp. 2d at 506 ("A jury would therefore be faced with competing expert opinions representing very different damage estimates, thus adding further uncertainty as to how much money—if any—the Class might recover at trial.").

Moreover, Defendants "have made clear that they strongly disagree with Lead Plaintiff's estimate of likely recoverable damages." (Pl. Br. for Settlement Approval 16). Given the

10

inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context, the Court finds that this factor weighs in favor of approving the Settlement.

### 6. The Risks of Maintaining a Class Action through the Trial

Pursuant to Fed. R. Civ. P. Rule 23, a court may decertify a class during litigation if it proves to be unmanageable. *Prudential*, 148 F.3d at 321 (citations omitted). To the extent such risk is low, courts tend to place less weight on this factor. *See Cendant*, 264 F.3d at 239 (finding that the risk of decertification was extremely slight, rendering this factor effectively neutral); *see also Rent-Way*, 305 F. Supp. 2d at 506-07 ("Our Court of Appeals has recognized that this exercise is somewhat perfunctory, since the district court always retains the discretion to decertify or modify a class that becomes unmanageable.").

This Court granted class certification on July 23, 2012. (Order Granting Motion to Certify Class, D.E. No. 287). Although there may be inherent risks in maintaining a class throughout trial, there is nothing in the record to suggest decertification is likely here. The Court finds that this factor is effectively neutral.

### 7. The Ability of Defendants to Withstand a Greater Judgment

The seventh factor set forth in *Girsh* considers "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. Notably, even a finding that this factor cuts against Settlement approval may not materially alter the Court's fairness analysis. *See, e.g., Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 333 (finding that even when defendant "likely can withstand a judgment significantly greater than the Settlement . . . this determination in itself does not carry much weight in evaluating the fairness of the Settlement."); *Warfarin*, 391 F.3d at 538 (concluding that Defendant's ability to pay a higher amount was irrelevant in determining the fairness of the settlement).

As of year-end 2011, Par had a market capitalization of approximately $1.2 billion, and it reported $162.52 million of cash equivalents. (Pl. Br. for Settlement Approval 18). Yet, Lead Plaintiff argues that Par's directors' and officers' insurance was rapidly depleting as a result of the present litigation, and "if the case proceeded to trial and the likely appeals, the policies almost certainly would have been severely depleted." (*Id.*). Moreover, Lead Plaintiff argues that Par's financial position months or years from now is very difficult to predict, given the highly competitive pharmaceutical market in which Par operates. (*Id.*).

Considering Par's financial position, the arguments advanced by Lead Plaintiff, and the uncertainty of trial outcomes, the Court finds that this factor slightly weighs in favor of approving the Settlement.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of the Attendant Risks of Litigation

The final two factors set forth in *Girsh* are typically considered in tandem, and "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement. *General Motors,* 55 F.3d at 806 (citation & internal quotation marks omitted).

Here, Lead Plaintiff maintains that the Settlement's 7% recovery of total class-wide damages "is consistent with or above the average level of recovery in similar securities fraud class actions." (Pl. Br. for Settlement Approval 20); *see also In re Raviscent Techs., Inc. Sec. Litig.*, No. 00-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) ("As another court in this District has noted, a study by Professor John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia University Law School, determined that since 1995, class action settlements have

12

typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (citations & internal quotation marks omitted).

As detailed in Sections III.A.4 and III.A.5, *supra*, the Court appreciates the significant risks associated with the full adjudication of this matter. In addition, Lead Plaintiff's 7% recovery figure suggests that the Settlement is within the proper range of reasonableness in light of the best possible recovery. Therefore, the Court finds that both of these factors weigh in favor of approving the Settlement.

In sum, the Court finds that the balance of the *Girsh* factors decidedly weighs in favor of approving the Settlement.

### B. Plan of Allocation

The Court next considers whether to approve Lead Plaintiff's Plan of Allocation.

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Datec*, 2007 WL 4225828, at *3 (citation omitted). "The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Alt. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). Moreover, "[t]he proposed allocation need not meet the standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 268 (E.D. Va. 2009).

Here, Lead Plaintiff developed the Plan of Allocation with the assistance of its damages expert. (Pl. Br. for Settlement Approval 21). The Plan of Allocation "provides for the distribution of the Net Settlement Funds on a *pro rata* basis based on a formula tied to liability

13

and damages." (*Id.*). The calculation of each Authorized Claimant's Net Recognized Loss "will depend on several factors, including when the Authorized Claimant purchased his, her, or its Par stock during the Class Period, whether the stock was held over the corrective disclosure, whether the stock was sold during the Class Period, and if so, when." (*Id.* at 22).

Lead Plaintiff's Plan of Allocation is fair, adequate, and reasonable. It is fully recommended by Lead Counsel, and, although notice was sent to over 84,572 potential class members, no member has objected to it. (*Id.* at 23). Therefore, the Court finds that the balance of factors weighs in favor of approving the Plan of Allocation.

C.     **Award of Attorneys' Fees**

Next, the Court considers Lead Counsel's request for an award of attorneys' fees.

Lead Counsel seeks $2,430,000, or 30% of the settlement fund, as attorneys' fees. (July 2, 2013 Fairness Hearing Tr. 29:23-30:18). Applying the factors set forth in *Gunter*, the Court finds that Lead Counsel's request for attorneys' fees is justified.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Cendant*, 404 F.3d 173, 205 (3d Cir. 2005) ("[W]e agree with the long line of common fund cases that hold that attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation.") (citation & internal quotation marks omitted).

First, courts consider "the size of the fund created and the number of persons benefitted." *Rite Aid*, 396 F.3d at 301 (citation omitted). Here, the $8.1 million settlement represents a sizeable recovery for the Par shareholders. As set forth in Section III.A.8, *supra*, this figure is "estimated to be approximately 7% of total class-wide damages, consistent with or above the

average for securities fraud class actions." (Memorandum of Law in Support of Lead Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses & Compensatory Award to Lead Plaintiff ("Pl. Br. for Attorneys' Fees") 13, D.E. No. 317-1). Furthermore, the Settlement will benefit a significant number of individuals. The class consists of all persons who purchased Par stock from July 23, 2001 through July 5, 2006. (*Id.*). Lead Counsel mailed 84,572 notice packets to potential class members, and received 367 claims by the end of May, 2013. (*Id.* at 14). Thus, the size of the fund and the number of persons benefitted support approving the requested fee.

Second, courts consider "the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel." *See Rite Aid*, 396 F.3d at 305 ("[T]he absence of substantial objections by class members to the fee requests weigh[s] in favor of approving the fee request."). Here, as set forth in Section III.A.2, *supra*, Lead Counsel did not receive a single objection to the Settlement, nor did Lead Counsel receive any valid requests for exclusion. (Pl. Br. for Attorneys' Fees 14). The lack of any objections or exclusions strongly supports approval of the Settlement.

Third, courts consider "the skill and efficiency of the attorneys involved." *Rite Aid*, 396 F.3d at 301 (citation omitted). Here, Lead Counsel and Liaison Counsel are highly skilled attorneys that specialize in complex federal civil litigation involving securities class actions. (Pl. Br. for Attorneys' Fees 15). Moreover, Defendants' counsel are highly-regarded attorneys who "zealously fought Lead Plaintiff's claims at every turn." (*Id.*). This factor strongly weighs in favor of approving the fee request.

Fourth, courts consider "the complexity, expense, and likely duration of the litigation." *Rite Aid*, 396 F.3d at 301 (citation omitted). As set forth in Section III.A.1, *supra*, securities

15

fraud class actions are notably complex, lengthy, and expensive cases to litigate. In addition, Lead Plaintiff faced further discovery and depositions in light of extensive preparation for summary judgment, pre-trial motions, and post-trial appeals. (Pl. Br. for Settlement Approval 8). As such, this factor weighs in favor of approving the fee request.

Fifth, courts consider the "risks of non-payment or non-recovery." *Rite Aid*, 396 F.3d at 301 (citation omitted). These risks include the "risks of establishing liability." *Id.* at 304. As set forth in Section III.A.4, *supra*, Lead Plaintiff faced substantial risks at trial, including the difficult tasks of proving scienter and establishing damages. Therefore, the Court finds that this factor weighs in favor of approving the fee request.

Sixth, courts consider the "amount of time devoted to the case." *Rite Aid*, 396 F.3d at 301 (citation omitted); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 171 (3d Cir. 2006) (noting that this factor "overlaps with the third" factor). Through May 31, 2013, Lead Counsel and Liaison Counsel "spent 7003.4 hours of attorney and other professional support time prosecuting the action." (Pl. Br. for Attorneys' Fees 19). As noted in Section III.A.3, *supra*, Lead Counsel engaged in extensive factual and legal investigations, which included interviewing former Par employees and retaining an experienced economist to assess likely damages. The Court finds that this factor weighs in favor of approving the fee request.

Seventh, courts consider "the awards in similar cases." *Rite Aid*, 396 F.3d at 301 (citation omitted). Lead Plaintiff submits, and this Court agrees, that "a fee of 30% or more of the settlement is common in cases settling for similar amounts." (Pl. Br. for Attorneys' Fees 20); *see also In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery.") (citation omitted). The Court finds that Lead Counsel's fee request is comparable to

fees typically awarded in analogous cases. As such, the final factor weighs in favor of approving the fee request.

In addition to assessing the *Gunter* factors, courts in the Third Circuit confirm the reasonableness of a fee by using the lodestar calculation method when a fee award is based on a percentage of recovery. *See Rite Aid,* 396 F.3d at 305–06. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Id.*

Here, Lead Counsel's lodestar value is $3,037,533, a figure significantly higher than the requested fee. (Pl. Br. for Attorneys' Fees 10-11). Thus, the lodestar "cross-check" confirms the reasonableness of Lead Plaintiff's fee request.

### D. Reimbursement of Litigation Expenses

Next, the Court considers Lead Counsel's request for reimbursement of litigation expenses.

"Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp. Deriv. Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); *see also AT&T,* 455 F.3d at 172 n.8 ("Expenses are generally considered and reimbursed separately from attorneys' fees . . . .").

Lead Counsel "requests reimbursement of $587,928.43 in expenses advanced or incurred . . . while prosecuting this Action." (Pl. Br. for Attorneys' Fees 21). The Court has carefully reviewed Lead Counsel's declarations summarizing and categorizing its expenses, and finds that Lead Counsel's request for reimbursement of litigation expenses is reasonable.

### E. Compensatory Award to LAMPERS

Finally, the Court considers whether to award LAMPERS a compensatory award for its role in the pending litigation.

The PSLRA states that "[n]othing in this paragraph shall be construed to limit the award of reasonable expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Pursuant to this subsection, Lead Counsel requests an award of $18,000 "to compensate it for its reasonable costs and expenses incurred in managing this litigation and representing the Class." (Pl. Br. for Attorneys' Fees 22).

Here, LAMPERS "stepped into the role of Lead Plaintiff at a crucial point in this Action." (*Id.*). Specifically, LAMPERS (i) reviewed and approved pleadings filed in this Action; (ii) had extensive and regular telephonic and email communications with Lead Counsel regarding strategy and developments in the Action; (iii) reviewed and commented on submissions to the Court and the Mediator; (iv) reviewed and approved the retention of experts; and (v) fully participated in the mediation and settlement discussions on behalf of the Class. (*Id.* at 22-23). Moreover, Lead Counsel included in the notice packets to potential class members that Lead Plaintiff would seek a compensatory award no greater than $18,000, and Lead Counsel received no objections. (*Id.* at 23); *see also Lucent Techs.*, 307 F. Supp. 2d at 450 (granting motion for compensatory award where notice was provided to all potential class members and no party objected).

The Court grants Lead Counsel's request for a compensatory award of $18,000 to LAMPERS.

**F.     Conclusion**

For the reasons set forth above, the Court approves the Settlement and Plan of Allocation, and grants Lead Counsel's motion for award of attorneys' fees, reimbursement of litigation expenses, and compensatory award to LAMPERS.


                                                          *s/Esther Salas*
                                                          **Esther Salas, U.S.D.J.**